

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

ENTERED
11/21/2011

| | | |
|---|---|---|
| IN RE: § <br> JAMES GLEN WHITLEY; dba § <br> WHITLEY PROPERTIES; dba EDNA § <br> HOUSING; dba WHITLEY RANCH § <br> AND SEED COMPANY § <br> Debtor § <br> § | | CASE NO: 08-60098 <br><br> Chapter 13 |
| § | | |
| IN RE: § <br> JAMES GLEN WHITLEY; dba § <br> WHITLEY PROPERTIES; dba EDNA § <br> HOUSING; dba WHITLEY RANCH § <br> AND SEED COMPANY § <br> Debtor § | | CASE NO: 09-60044 <br><br> Chapter 7 |

**MEMORANDUM OPINION ON SHOW CAUSE ORDER REGARDING
COMPENSATION OF ATTORNEY REESE BAKER**
[Case No. 08-60098, Docket No. 79] [Case No. 09-60044, Docket No. 149]

**I. INTRODUCTION**

Pursuant to the Court's Show Cause Order (the Order), [Case No. 08-60098, Docket No. 79]; [Case No. 09-60044, Docket No. 149], the Court held a hearing: (a) to determine the reasonable value of the services Reese Baker (Baker) rendered to James Glen Whitley (the Debtor) in connection with Case No. 08-60098 (the 2008 Case) and Case No. 09-60044 (the 2009 Case); and (b) to show cause whether Baker must disgorge compensation that the Debtor has already paid him in connection with those cases.[1]

Baker argues that the Court should allow him to retain the fees that he has already received in connection with the 2008 Case and the 2009 Case because these fees are

---

[1] This matter was assigned to the undersigned judge when Judge Wesley W. Steen retired on January 14, 2011. After Judge Steen's retirement and before the appointment of Judge David Jones (Judge Steen's successor), this Court held a multi-day hearing on the Order. Although the main case was transferred to Judge Jones upon his taking the bench on September 30, 2011, the undersigned judge retained this particular dispute in the interest of judicial efficiency and economy.

reasonable. The United States Trustee and Lowell Cage, in his capacity as Chapter 7 Trustee (the Trustee), argue that Baker should disgorge these fees because Baker did not comply with requirements of the Code.[2] The United States Trustee and the Trustee also argue that Baker's services were not reasonable because they did not produce an identifiable, tangible, and material benefit to the Debtor or to the Debtor's estate.

For the reasons set forth below, the Court finds that Baker must disgorge the compensation that the Debtor has already paid to him because Baker violated his duty of disclosure. Furthermore, Baker's services provided no benefit to the Debtor or the estate; therefore, his services provided no reasonable value. Accordingly, for this separate and independent reason, Baker must disgorge all consideration that the Debtor has already paid to him; and, moreover, Baker shall not be entitled to recover any of the fees that he has requested.

Based upon the entire record, the Court now makes findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion of law is construed as a finding of fact, it is also adopted as such. To the extent that any of this Court's oral findings and conclusions made on the record in open court conflict with the written findings and conclusions set forth herein, the latter shall govern. To the extent that any of this Court's oral findings and conclusions made on the record in open court are in addition to the written findings and conclusions set forth herein, these additional oral findings and conclusions are incorporated herein as if fully

---

[2] Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code. References to a "Rule" or "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure.

2

set forth in this memorandum opinion.

## II. CREDIBILITY OF WITNESSES

On April 8, June 30, August 10, 16, & 18, and September 15, 2011, the Court heard testimony from four witnesses: Baker, the counsel of record for the Debtor in the 2008 Case and the 2009 Case; the Debtor; William Heitkamp (Heitkamp), the Chapter 13 trustee appointed in the 2008 Case and the 2009 Case; and Linda Jacobs (Jacobs), the Debtor's daughter. The Court finds that Heitkamp was entirely credible and gives substantial weight to his testimony. The Court finds that Baker was, for the most part, credible and certainly gives some weight to his testimony. The Debtor, although at times somewhat confusing, was fairly credible, and the Court gives some weight to his testimony. Finally, Jacobs wavered significantly in her answers and testified that she had little personal knowledge regarding relevant facts; the Court gives her testimony very little weight.

## III. FINDINGS OF FACT

1. On November 3, 2008, the Debtor, acting *pro se*, filed a voluntary petition under Chapter 13 of the Code, initiating the 2008 Case. [Testimony of Baker]; [Testimony of the Debtor]. The Debtor filed his petition to stop the imminent foreclosure on his income producing real properties. [Testimony of Baker]; [Testimony of the Debtor].

2. Heitkamp was appointed the Chapter 13 Trustee. [Testimony of Heitkamp]; [Testimony of Baker]. On December 11, 2008, Heitkamp filed a motion to dismiss the 2008 Case because the Debtor had not filed his schedules, tax returns,

3

statement of financial affairs, and a plan. [Baker Ex. No. 4]; [Testimony of Heitkamp].

3. The Debtor subsequently retained Baker as his attorney. [Baker Ex. Nos. 1 & 2]. Baker has been licensed to practice law since 1979, and he is board-certified in both business and consumer bankruptcy by the Texas Board of Legal Specialization. [Testimony of Baker]. On December 3, 2008, the Debtor paid Baker $1,800.00 as a retainer fee. [Baker Ex. No. 2]. Baker did not file any pleadings disclosing the receipt of or seeking approval for this retainer. [Testimony of Baker].

4. The Debtor did not oppose Heitkamp's motion to dismiss. [Baker Ex. No. 17, p.8]; [Testimony of Baker]. On March 4, 2009, the Court dismissed the 2008 Case. [Baker Ex. No. 5].

5. On March 24, 2009, Baker filed his disclosure of compensation and his Chapter 13 fee application in the 2008 Case.[3] [Baker Ex. No. 6]; [Trustee Ex. No. 6]. Baker requested that the Court approve $16,474.62 in fees and expenses.[4] [Baker Ex. No. 6]. Heitkamp objected to this application. [Trustee Ex. No. 7]. The Court never ruled on the application because at the hearing on the fee application, Baker withdrew his request for fees and expenses in connection with the 2008 Case. [Baker Ex. No. 17, p.9]; [Testimony of Baker]; [Testimony of Heitkamp].

6. On April 6, 2009, the Debtor paid Baker the sum of $10,274.00. [Baker Ex. No.

---

[3] Though the 2008 Case was dismissed, it was not closed because Heitkamp had not yet filed his final report and account pursuant to Rule 5009. Baker's fee application was by no means a moot issue.

[4] Baker requested $18,274.62 in total, but he deducted the $1,800.00 retainer fee. [Baker Ex. No. 6]. The Court does not understand why Baker deducted the $1,800.00 because this Court must approve **all** fees received by Baker in connection with his representation of the Debtor.

4

9]. $10,000.00 of this amount related to fees that Baker claims to have earned in the 2008 Case, and the remaining $274.00 related to the Chapter 13 filing fee in contemplation of Baker filing another Chapter 13 petition for the Debtor. [Testimony of Baker]; [Testimony of the Debtor].

7. On April 7, 2009, the Debtor, with Baker as attorney of record, filed another Chapter 13 petition, initiating the 2009 Case. [Baker Ex. No. 18]. Heitkamp was again appointed the Chapter 13 Trustee. [Testimony of Heitkamp]; [Testimony of Baker]. Baker proposed five plans in this case. [Trustee Ex. Nos. 8-11, 14]. None of the plans were confirmed. *See* [Baker Ex. No. 18].

8. On July 20, 2009, the Court dismissed the 2009 Case with prejudice. [Baker Ex. No. 18, p.11]. On August 3, 2009, after the 2009 Case was dismissed, Baker filed a Chapter 13 Fee Application (the Fee Application) seeking compensation for services rendered in the 2009 Case; Baker requested that the Court approve $9,859.75 in fees and expenses. [Baker Ex. No. 12].[5] Heitkamp and a secured creditor objected to this fee application. [Trustee Ex. Nos. 18 & 21].

9. On August 27, 2009, the Debtor transferred two properties—604 Church Street, Edna, Texas (the Church Street property), and 2862A St. Hwy. 111 N, Edna, Texas (the Hwy 111 property)—to BK/HSH, LLC, an entity that Baker owns and controls (the Baker-Owned LLC). [Testimony of Baker]. The Baker-Owned LLC did not give any consideration in exchange for these transfers. [Testimony of

---

[5] Baker requested $21,933.75 in total, but he deducted the $1,800.00 paid during the 2008 Case and the $10,274.00 paid three days prior to the filing of the 2009 Case. [Baker Ex. No. 12]; [Testimony of Baker]. Again, the Court does not understand why Baker made the deductions that he did because this Court must approve **all** fees received by Baker in connection with his representation of the Debtor.

5

Baker]. Baker never disclosed these transfers to the Court. [Testimony of Baker].

10. On September 29, 2009, Baker amended the Fee Application in the 2009 Case. [Baker Ex. No 18, p.13]. That day, he also filed his disclosure of compensation for the 2009 Case. [Baker Ex. No 18, p.13].

11. On October 6, 2009, the Court vacated its order of dismissal, reinstated the 2009 Case, and converted it to a case under Chapter 7. The Court also granted Baker's motion to withdraw the Fee Application in the 2009 Case. [Baker Ex. No. 18, p.14]; [Testimony of Heitkamp]. The Trustee for the converted Chapter 7 case (i.e. Lowell Cage) was appointed on October 15, 2009. [Baker Ex. No. 18, p.14].

12. On June 30, 2010, the United States Trustee filed Adversary No. 10-6004 against the Debtor seeking denial of discharge pursuant to Section 727. [Baker Ex. No. 18, p.18]. On September 10, 2010, the Court denied the Debtor's discharge. [Baker Ex. No. 18, p.18].

13. In the end, the Debtor received no benefit from the 2008 Case or the 2009 Case. [Testimony of the Debtor].[6]

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue Are Proper, and This Court Has Constitutional Authority to Sign a Final Order.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related

---

[6] On cross-examination, Mr. Wentworth, the attorney for the Trustee, asked the Debtor: "What benefit did you get from the results of these cases"? The Debtor replied "None." [Tape Recording, 6/30/2011 Trial at 4:43:40 p.m.].

6

to cases under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." § 157(a); and, in the Southern District of Texas, General Order 2005-6 (entitled General Order of Reference) automatically refers all cases and adversary proceedings to the bankruptcy court. Furthermore, this particular dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (O).

In the wake of the Supreme Court's ruling in *Stern v. Marshall*, 131 S.Ct. 2594, 2608 (2011), this Court must also evaluate whether it has the constitutional authority to sign a final order adjudicating the dispute at bar. In *Stern*, the Supreme Court held that 28 U.S.C. § 157(b)(2)(C)—which authorizes bankruptcy judges to issue final judgments in counterclaims by a debtor's estate against entities filing claims against the estate—is an unconstitutional delegation of Article III authority to bankruptcy judges, at least when the dispute being adjudicated is based on state common law and does not affect the claims adjudication process. 131 S. Ct. 2594, 2616 (2011).

The dispute at bar is not a counterclaim of the Debtor, nor does it arise out of state law; therefore, *Stern* does not apply. This suit arises out of alleged violations of the disclosure requirements imposed by an express Bankruptcy Code provision—i.e. § 329. Moreover, the Trustee also seeks relief based upon another express Bankruptcy Code provision—i.e. § 330, which allows the Court to award or deny compensation to attorneys that represent the debtor and the debtor's estate. State law has no equivalent to these statutes; they are purely creatures of the Bankruptcy Code. Accordingly, the resolution of this dispute is not based on state common law, *Stern* does not apply, and this Court has the constitutional authority to enter a final judgment in this dispute pursuant to

28 U.S.C. §§ 157(a) and (b)(1).

Alternatively, even if *Stern* does apply, this Court concludes that the exception articulated by the Supreme Court applies. In *Stern*, the Supreme Court discusses a "public rights" exception to the general rule that only an Article III judge may exercise adjudicative authority. 131 S. Ct. at 2611. In general, the "public rights" exception arises when "Congress selects a quasi-judicial method of resolving matters that could be conclusively determined by the Executive and Legislative Branches, [because] the danger of encroaching on the judicial powers is less than when private rights, which are normally within the purview of the judiciary, are relegated as an initial matter to administrative adjudication." *CFTC v. Schor,* 478 U.S. 833, 853-54 (1986). Although a public rights dispute may arise between two individuals, "it is still the case that what makes a right 'public' rather than private is that the right is integrally related to particular federal government action." *Stern*, 131 S. Ct. at 2613.

The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363-64, (2006).[7] Disputes over rights created by the Bankruptcy Code itself as part of the public bankruptcy scheme fall within the "public rights" exception. *See Thomas v. Union*

---

[7] Though the Supreme Court has not squarely addressed whether bankruptcy is a public right, it currently seems to approach bankruptcy as a public right. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 131 S. Ct. at 2614 n.7 ("We noted [in *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 56 n.11 (1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.' . . . Because neither party asks us to reconsider the public rights framework for bankruptcy, we follow the same approach here.")

8

*Carbide Agricultural Products Co.*, 473 U.S. 568, 593 (1985). (allowing non-Article III adjudication of rights created by a public regulatory scheme). A bankruptcy court may enter final judgments in these matters. The dispute at bar relates solely to compensation of an attorney (i.e. Baker), a right established by §§ 329 & 330 of the Bankruptcy Code; and thus, it falls within this Court's constitutional authority. Moreover, whether this Court approves payment of Baker's fees affects the amount of distributions that will be made to unsecured creditors, as their claims are subordinate to the administrative claim that Baker will hold if his requested fees are allowed. Accordingly, the dispute at bar falls within the "public rights" exception articulated in Stern because the outcome of this dispute affects the distribution of property among all of the Debtor's creditors.

### B. Baker Breached His Duty to Disclose All Connections with the Debtor.

Baker had a duty to timely file a disclosure of compensation identifying all compensation that he received or expected to receive from the Debtor. Section 329(a) of the Code imposes a duty on all attorneys connected with a bankruptcy case to "file with the court a statement of the compensation paid or agreed to be paid" for any services rendered to the bankruptcy estate. *Tex. Comptroller of Pub. Accounts v. Zars (In re Zars)*, 434 B.R. 421, 432 (W.D. Tex. 2010). Section 329(b) grants the bankruptcy court the power to "cancel any such agreement" if the compensation "exceeds the reasonable value of any such services." *Id.* Federal Rule of Bankruptcy Procedure 2016(b) implements Section 329 by requiring those seeking compensation for services from the estate to file "an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." FED. R. BANKR. P. 2016(b) (2008). Indeed, Rule 2016 imposes a mandatory and continuous requirement on the attorney seeking compensation the burden to prove the reasonableness of any fees

9

through full and timely disclosure. *In re Evangeline Refining*, 890 F.2d 1312, 1326 (5th Cir. 1989). An attorney who fails to comply with the requirements of Section 329(a) or Rule 2016(b) is subject to forfeiture of any right to receive compensation for services rendered on behalf of the debtor, and to disgorgement of any funds already paid by the debtor. *In re Mayeaux*, 269 B.R. 614, 622 (Bankr. E.D. Tex. 2001).

Baker should disgorge all postpetition compensation for the 2008 Case because he did not timely file a Rule 2016 disclosure. The version of Rule 2016 effective on December 3, 2008 (when the Debtor retained Baker as his bankruptcy attorney) required Baker to file the statement required by Section 329 and transmit that statement to the United States Trustee within fifteen days after the order for relief.[8] FED. R. BANKR. P. 2016(b) (2008). Yet, Baker did not file this statement until March 24, 2009, [Finding of Fact No. 5], which was three months after receipt of the $1,800.00 retainer and three weeks after this Court dismissed the 2008 Case. *See* [Finding of Fact Nos. 3, 4, & 5]. Therefore, Baker did not timely fulfill his disclosure obligations, and he should disgorge all compensation for the 2008 Case. *Mayeaux*, 269 B.R. at 622.

Even in the absence of Rule 2016, the $1,800.00 postpetition payment would be improper. Money paid to Debtor's counsel in the post-petition period constitutes estate property. *Barron v. Countryman*, 432 F.3d 590, 597 (5th Cir. 2005). It is elementary bankruptcy law that all post-petition earnings of a Chapter 13 debtor constitute property of the bankruptcy estate. *Id.* A Chapter 13 debtor has no authority to transfer estate property to an attorney without proper notice to the court. *Id.* Since Baker never

---

[8] The current version of this rule requires counsel to file a disclosure of compensation within fourteen days after the order for relief. The current version of the rule took effect December 1, 2009.

10

requested permission from the Court to receive these funds, [Finding of Fact No. 3], he denied the Court an opportunity to review the transfer. Accordingly, this Court has a sound basis to order Baker to disgorge his undisclosed postpetition fees for the 2008 Case.

Similarly, Baker should disgorge all compensation for the 2009 Case because Baker did not timely file a Rule 2016 disclosure. The Debtor paid Baker $10,274.00. [Finding of Fact No. 6]. $10,000.00 was, according to Baker, for fees that his firm earned in the 2008 Case, and the remaining $274.00 was a filing fee for the 2009 Case.[9] *Id.* The order for relief in the 2009 Case was entered on April 7, 2009. 11 U.S.C. § 301(b); [Finding of Fact No. 7]. Baker's 2016 disclosure was therefore due fifteen days later on April 22, 2009. FED. R. BANKR. P. 2016(b) (2008). Baker did not file his disclosure statement until September 29, 2009. [Finding of Fact No. 10]. Therefore, Baker did not timely fulfill his disclosure obligations, and he should disgorge all compensation in connection with the 2009 Case.

Baker also had a duty to disclose all connections that he, or any entity with which he is affiliated, had relating to any party in interest in the Debtor's case. Attorneys seeking compensation have a duty to reveal **all** connections. *In re Kuykendahl Place Assoc., Ltd.*, 112 B.R. 847, 849-850 (Bankr. S.D. Tex. 1989); *see also In re C&C Demo, Inc.*, 273

---

[9] The Court has already concluded that Baker should disgorge all fees related to the 2008 Case, including the $10,000.00 that Baker received on April 6, 2009 (i.e. after the dismissal of the 2008 Case but before the filing of the 2009 Case). The Court, however, also analyzes the $10,000.00 as if it were paid as a condition to Baker agreeing to represent the Debtor in the 2009 Case (as opposed to these funds being paid for services rendered in the 2008 Case). The Court does this additional analysis because when Judge Steen was still presiding over this matter, Baker, at some point, argued that the $10,000.00 payment was a condition for Baker's agreement to represent the Debtor in the 2009 Case—which suggests that Baker took these funds not for services rendered in the 2008 Case, but as a retainer to pay for services to be rendered in the 2009 Case. *See* Judge Steen's Memorandum and Order Denying Motion for Summary Judgment, p.10, Docket No. 25, Case No. 10-06003. In either event, the Court concludes that Baker should disgorge the $10,000.00.

B.R. 502, 506 (Bankr. E.D. Tex. 2001) ("[A]ny professional who seeks to be employed by a bankruptcy estate assumes an affirmative duty to disclose all connections with parties in interest, and to reveal any interest which may be antagonistic or opposite to the interest of the estate."). Full disclosure requires disclosure of **any** connection which may have a bearing on the attorney's or law firm's ability to represent the debtor free of any conflict or adverse interest. *In re Kuykendahl Place Assoc., Ltd.,* 112 B.R. 847, 849–850 (Bankr. S.D. Tex. 1989) (emphasis added). Without this full disclosure, court-appointed counsel proceed at their own risk. *Arens v. Boughton (In re Prudhomme),* 43 F.3d 1000, 1003 (5th Cir. 1995) (citing numerous cases); *Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir. 1994); *see, e.g., In re Roger J. Au & Son, Inc.,* 71 B.R. 238, 242 (Bankr. N.D. Ohio 1986) (failure to disclose facts material to potential conflict may provide totally independent ground for denial of fees, quite apart from the actual representation of competing interests).

Baker breached his duty of disclosure because he did not disclose that the Baker-Owned LLC acquired properties in a transaction with the Debtor. The Baker-Owned LLC acquired the Hwy 111 property and the Church Street property from the Debtor on August 27, 2009. [Finding of Fact No. 9]. These transfers occurred before Baker filed his 2016 disclosure in the 2009 Case on September 29, 2009, [Finding of Fact No. 10], and Baker should have disclosed these transactions.[10] Regardless of whether the undisclosed connections were materially adverse or only of a *de minimis* nature, the integrity of the bankruptcy system depends on honest and comprehensive compliance by

---

[10] Even if this transaction had occurred after the initial disclosure, Rule 2016 imposes a duty of **continuing** disclosure. *In re Evangeline Refining,* 890 F.2d 1312, 1326 (5th Cir. 1989).

a proposed professional with these disclosure requirements. *In re C&C Demo, Inc.*, 273 B.R. 502, 508 (Bankr. E.D. Tex. 2001). This Court must protect the integrity of the bankruptcy system by ensuring that these disclosure requirements are satisfied. Accordingly, this Court polices the disclosure requirements of the Bankruptcy Code and Rules with its sanction powers, including the discretion to order the disgorgement of all sums received by counsel and the forfeiture of all compensation paid to counsel in a particular case. *Prudhomme*, 43 F.3d at 1003; *In re C&C Demo, Inc.*, 273 B.R. at 508.

The Court concludes that forfeiture of all fees paid to Baker is both proper and necessary to protect the integrity of the bankruptcy system. Baker has practiced for over thirty years and maintains a certification in consumer and business bankruptcy law. [Finding of Fact No. 3]. Therefore, he is held to a higher duty of care than those who do not hold a board certification and have less experience. Baker did not timely file his disclosure of compensation in either the 2008 Case or the 2009 Case, which provides this Court grounds to order disgorgement of all compensation received and deny all compensation sought.[11] *Prudhomme*, 43 F.3d at 1003; *Rome*, 19 F.3d at 59. Aside from **untimely** disclosure, Baker also failed to make **adequate** disclosure of fee arrangements and connections with the Debtor, which provides this Court additional grounds to order disgorgement of all compensation received and deny all compensation sought. *Prudhomme*, 43 F.3d at 1003. Accordingly, the Court orders disgorgement of all fees that the Debtor paid to Baker, and denies all compensation that Baker seeks. Disgorgement of the fees already paid includes unwinding the transfers of the Hwy 11

---

[11] While Baker was practicing this nasty habit of non-disclosure before Judge Steen, he was doing the same before the undersigned judge. *See, e.g., In re Ball*, No. 07-32628 (Bankr. S. D. Tex. Sept. 23, 2011) (order reducing fees for untimely disclosure); *In re Brown*, No. 09-32480 (Bankr. S. D. Tex. Mar. 24, 2010) (same); *In re Kucherka*, No. 09-30147 (Bankr. S. D. Tex. Mar. 24, 2010) (same).

Property and the Church Street Property. The Baker-Owned LLC must transfer these properties to the Trustee, who will then liquidate them to pay claims in the 2009 Case.

### C. Baker's Fees were not Reasonable Because They Did Not Provide an Identifiable, Tangible, and Material Benefit to the Debtor or His Chapter 13 Estate.

Assuming *arguendo* that Baker had complied with his duty of disclosure (both as to timeliness and adequacy), his fees were nevertheless unreasonable—which provides still another basis for disgorging all monies paid to him and denying all fees that he requests. To determine reasonable compensation under § 330(a) for the services rendered, the court must determine the "nature and extent of the services supplied by" the attorneys. *In re First Colonial Corp.*, 544 F.2d 1291, 1299 (5th Cir. 1977). The court must also assess the value of the services. These two factors comprise the components for the lodestar calculation. *See Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987). Generally, the lodestar is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). To determine the hours reasonably expended, the court must assess the identifiable, tangible, and material benefit provided to the bankruptcy estate by the services rendered. *In re Pro-Snax Distribs., Inc.*, 157 F.3d 414, 426 (5th Cir. 1998); *see also In re Walton*, No. 07-38475, 2009 Bankr. LEXIS 93, at *5–6 (Bankr. S.D. Tex. Jan. 16, 2009) (applying *Pro-Snax* to a Chapter 13 debtor's counsel). In a Chapter 13 case, the court must also determine reasonable compensation for representing the interests of the debtor (in addition to the estate) in connection with the case based on a consideration of the benefit and necessity of the services to the debtor, as well as the other factors provided in § 330(a). 11 U.S.C. § 330(a)(4)(B); 3 COLLIER ON BANKRUPTCY, ¶ 330.03 (Alan Resnick & Henry J. Sommer eds., 16th ed. 2010).

The Court determines that Baker's services did not provide a benefit to the Debtor or the Debtor's estate. According to *Pro-Snax*, any services provided by professionals must result in an identifiable, tangible, and material benefit to the bankruptcy estate in order to be compensable. 157 F.3d 414, 426 (5th Cir. 1998); *Walton,* 2009 Bankr. LEXIS 93, at *5–6. This Court, in addition to other bankruptcy courts in Texas, considers both prospective and retrospective viewpoints when applying *Pro-Snax* in conjunction with Section 330. *See, e.g., In re Cyrus II P'ship*, No. 05-39857, 2009 Bankr. LEXIS 2587, 2009 WL 2855725, at *5 (Bankr. S.D. Tex. Sept. 1, 2009); *In re Energy Partners, Ltd.*, 409 B.R. 211, 228–30 (Bankr. S.D. Tex. 2009); *In re Am. Hous. Found.*, No. 09-20232, 2010 Bankr. LEXIS 2710, 2010 WL 3211691, at *2 (Bankr. N.D. Tex. Aug. 11, 2010); *In re Spillman Dev. Grp.*, Ltd., 376 B.R. 543, 550–54 (Bankr. W.D. Tex. 2007). Prospectively, the Court requires that "at the time the services are performed . . . the chances of success must outweigh the costs of pursuing the action." *Pro-Snax*, 157 F.3d at 426; *see Cyrus II P'ship*, 2009 Bankr. LEXIS 2587, 2009 WL 2855725, at *5. Then, the Court retrospectively evaluates whether the services resulted in an identifiable, tangible, and material benefit to the estate—recognizing that a service may benefit the estate without resulting in a quantifiable or monetary return. *Cyrus II P'ship*, 2009 Bankr. LEXIS 2587, 2009 WL 2855725, at *5 (citing *In re JNS Aviation, LLC*, No. 04-21055, 2009 Bankr. LEXIS 8, 2009 WL 80202, at *8 (Bankr. N.D. Tex. Jan. 9, 2009)) ("The Court does not construe the benefits analysis to require that each expenditure of time result in a quantifiable benefit to the estate.").

Looking first to the prospective analysis, Baker's services probably were necessary to the administration of the Debtor's case. The plain language of Section 330

sets forth several factors as guidance to evaluate whether services were necessary or beneficial. Baker's fee applications contain exhibits that comply with the requirements of *In re First Colonial Corp.*, insofar as the exhibits recite the number of hours worked and contain a description of how Baker spent each of those hours. 544 F.2d 1291, 1299 (5th Cir. 1977). Baker testified that he has handled several complex consumer and business bankruptcies, and that he maintains certifications from the Texas Board of Legal Specialization. [Finding of Fact No. 3]. Thus, Baker had the requisite skill and experience. The Debtor retained Baker twice, demonstrating that the Debtor believed that the legal services were necessary to the administration of his case. [Finding of Fact Nos. 3 & 7]. Therefore, the Court concludes that Baker's services were probably necessary to the administration of the Debtor's case at the time that Baker rendered the services.

Turning to the retroactive analysis, the Court concludes that Baker's services did **not** result in an identifiable, tangible, and material benefit to the Debtor's interest. None of the plans that Baker proposed were confirmed, [Finding of Fact No. 7]; nor did the Debtor retain any properties. *See* [Finding of Fact No. 13]. Baker presented no evidence of any result beneficial to the Debtor or—for that matter—to the estate. Baker's services did nothing other than delay foreclosure on the properties owned by the Debtor. Moreover, the Debtor failed to receive his discharge. [Finding of Fact No. 12]. It is therefore no understatement to conclude that Baker's services rendered absolutely no benefit to the Debtor, which is exactly what the Debtor said in his testimony. [Finding of Fact No. 13]. Accordingly, the Court concludes that Baker did not provide an identifiable, tangible, and material benefit to either the Debtor or his Chapter 13 estate.

All of Baker's services must pass both tests; otherwise, this Court has grounds to order disgorgement. Though Baker's services may pass the prospective test, they certainly fail the retroactive test. Accordingly, the fees relating to these services are not reasonable because they failed to provide an identifiable, tangible and material benefit to the Debtor and his Chapter 13 estate; therefore, the fees should be denied and any compensation already paid should be disgorged.

## V. Conclusion

In sum, the Court concludes that: (1) Baker violated his duty of disclosure; and (2) his firm's services provided no identifiable, tangible and material benefit to the Debtor or the Debtor's estate. Therefore, Baker's fees are entirely disapproved and he must also disgorge all of the consideration that he has already received from the Debtor. An order consistent with this memorandum opinion will be simultaneously entered on the docket.

Signed on this 21st day of November, 2011.

Jeff Bohm
United States Bankruptcy Judge